UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

QUANDELL HICKMAN,

                              Plaintiff,

                  -v.-

THE CITY OF NEW YORK,

                              Defendant.

---

19 Civ. 5292 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Quandell Hickman ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 for alleged violations of his constitutional rights during his confinement in the New York City Department of Correction's Manhattan Detention Center ("MDC").  Specifically, Plaintiff alleges that Defendant City of New York ("Defendant" or the "City") violated his constitutional rights by installing cameras that point directly into the showers in the housing areas of the MDC.  The City has moved, unopposed, for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, the motion is granted.

**BACKGROUND**[1]

**A.    Factual Background**

At the time the Complaint was filed in this action, Plaintiff was a convicted and sentenced inmate held in the MDC.  (Compl. ¶ III).  Plaintiff alleges that, throughout his period of confinement, a camera pointed directly towards and into the shower in his MDC housing unit.  (*Id.* at ¶ V).  Plaintiff further alleges that, as a result, staff could watch the video recordings "as many times as they want" without inmates' consent.  (*Id.*).  According to Plaintiff, every housing unit in the MDC had a similar camera in the shower area.  (*Id.*).  Plaintiff alleges that, by maintaining cameras in the shower areas of the MDC, the City invaded Plaintiff's right to privacy and intentionally inflicted emotional distress.  (*Id.*).  Plaintiff seeks $500,000 in damages for his pain and suffering, as well as injunctive relief in the form of immediate removal of the cameras.  (*Id.* at ¶ VI).

**B.    Procedural Background**

Plaintiff filed his request to proceed *in forma pauperis* (Dkt. #1) and his *pro se* Complaint (Dkt. # 2) on June 4, 2019, in which Complaint he named as defendants both the City and the MDC.  In its Order of Service issued on July 16, 2019, the Court dismissed Plaintiff's claims against the MDC.  (Dkt.

---

[1]    This Opinion draws its facts from Plaintiff's Complaint ("Complaint" or "Compl." (Dkt. #2)), the well-pleaded allegations of which are taken as true for purposes of this motion.  *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).

For ease of reference, the Court refers to Defendant's Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings as "Def. Br." (Dkt. #50).

#5).  On October 15, 2019, the City filed its Answer to the Complaint, denying Plaintiff's allegations and asserting, *inter alia*, that the Complaint failed to state a claim upon which relief could be granted.  (Dkt. #11).  The Court held an initial pretrial conference on February 3, 2020 (Minute Entry for February 3, 2020), and issued a Civil Case Management Plan and Scheduling Order the same day (Dkt. #17).

After several extensions, the parties completed fact discovery on October 15, 2020.  (Dkt. #39).  The Court held a second pretrial conference on October 29, 2020.  (Minute Entry for October 29, 2020).  On December 16, 2020, the City filed a request for leave to submit a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. #43), which request Plaintiff declined to oppose.  On January 15, 2021, the Court granted the City's request for leave to file its motion.  (Dkt. #48).

The City filed its motion and supporting memorandum of law on February 16, 2021.  (Dkt. #49-50).  Plaintiff's opposition to the City's motion was due on April 1, 2021.  (Dkt. #48).  However, to date, Plaintiff has not submitted an opposition and has not responded to the Court's several inquiries regarding his intent to oppose to such motion.  (*See* Dkt. #52).  Accordingly, the Court deems the motion fully briefed and ripe for resolution.

## DISCUSSION

**A.   Applicable Law**

### 1.   Motions for Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Courts evaluate motions for judgment on the pleadings under Rule 12(c) using the same standard as for motions to dismiss under Rule 12(b)(6).  *See Altman* v. *J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015) (citing *Johnson* v. *Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).  Accordingly, courts are to "draw all reasonable inferences in [the non-movant's] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). The non-movant is entitled to relief if he or she alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleadings of specifics, it does require enough facts to nudge [the non-movant's] claims across the line from conceivable to plausible." (internal quotation marks and citation omitted)).

On a Rule 12(c) motion, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *Roberts* v.

*Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam).  "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted) (quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

"'Where, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests.'"  *Nielsen* v. *Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker* v. *Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).  Additionally, the "*Twombly* plausibility standard ... does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible."  *Lefkowitz* v. *McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 356 (S.D.N.Y. 2014) (quoting *Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).  Indeed, the Second Circuit has instructed that "[a] district court should not dismiss a claim 'unless it is satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief.'"  *Id.* (second alteration in original) (quoting *Patel* v. *Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).

"A plaintiff's failure to respond to a motion for judgment on the pleadings does not dictate dismissal of a complaint."  *Ismael* v. *City of New York*, No. 17 Civ. 1825 (AJN), 2018 WL 4757950, at *2 (S.D.N.Y. Sept. 28, 2018).  "Rather, 'if

the pleadings are themselves sufficient to withstand dismissal, a *pro se*

complaint will not be dismissed simply because the complainant failed to

respond to a Rule 12(c) motion.'" *Id.* (quoting *Nauss* v. *Barnhart*, 155 F. App'x

539, 540 (2d Cir. 2005) (summary order)).

### 2.      Claims Under 42 U.S.C. § 1983

"[Section 1983] creates no substantive rights; it merely provides remedies

for deprivations of rights established elsewhere." *City of Oklahoma City* v.

*Tuttle*, 471 U.S. 808, 816 (1985).  To state a claim under Section 1983, a

plaintiff must allege two elements: "[i] the defendant acted under color of state

law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial

of her federal statutory rights, or her constitutional rights or privileges." *Annis*

v. *Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

There are particular pleading requirements occasioned by Plaintiff's

request for damages under this statute.  "As a prerequisite to an award of

damages under § 1983, a plaintiff must show the personal involvement of

defendants in the alleged constitutional deprivations." *Vassallo* v. *City of New*

*York*, No. 15 Civ. 7125 (KPF), 2016 WL 6902478, at *6 (S.D.N.Y. Nov. 22, 2016)

(citing *Farid* v. *Ellen*, 593 F.3d 233, 249 (2d Cir. 2010)).  To show personal

involvement, a plaintiff must plead "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**B.     Analysis**

Plaintiff alleges that the City's installation of cameras pointed towards the shower area in the MDC violated his right to privacy and inflicted emotional distress.  (Compl. ¶ V).  The City argues that Plaintiff has failed to state a claim for (i) any violation of his constitutional rights, including his right to privacy; (ii) municipal liability against the City; and (iii) intentional infliction of emotional distress.  (Def. Br. 1).  The Court addresses each in turn.

**1.     Plaintiff's Right to Privacy Claim Under the Fourth Amendment**

Plaintiff first claims that the placement of cameras in the shower area of his housing unit was an "invasion of his privacy."  (Compl. ¶ V).  The Court construes this as a claim that the alleged video surveillance violated the Fourth Amendment prohibition on unreasonable searches.  This Court and others faced with similar challenges have concluded that such surveillance generally does not run afoul of the Fourth Amendment, and the Court sees no reason to depart from that position in this case.  The Court therefore agrees with the City that Plaintiff has failed to state a viable constitutional claim.

**a.     Applicable Law**

 "The Fourth Amendment guarantees 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"  *Smith* v. *Maryland*, 442 U.S. 735, 739 (1979) (alteration omitted).  The Second Circuit has maintained that under the Amendment, "inmates retain a limited right to bodily privacy," *Harris* v. *Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (citing *Covino* v. *Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992)), to

7

the extent such a limited right is consistent with the maintenance of prison security, *id.*  To state a cognizable privacy claim, an inmate must allege that (i) he "exhibited an actual, subjective expectation of bodily privacy," and (ii) prison officials lacked "sufficient justification to intrude on the inmate's [F]ourth [A]mendment rights."  *Telesford* v. *Annucci*, 693 F. App'x 1, 3 (2d Cir. 2017) (summary order) (quoting *Harris*, 818 F.3d at 57).

To determine whether intrusions on an inmate's privacy are sufficiently justified, courts must "apply one of two separate but overlapping frameworks." *Harris*, 818 F.3d at 57.  Where an inmate "challenges a prison regulation or policy," the claim is analyzed under *Turner* v. *Safley*, 482 U.S. 78 (1987), which decision established that a challenged "regulation is valid if it is reasonably related to legitimate penological interests."  *Harris*, 818 F.3d at 57-58 (internal quotation marks omitted) (quoting *Turner*, 482 U.S. at 89).  "Courts make this determination with reference to four factors discussed in *Turner*," *id.* at 58, which consider:

> (i) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (ii) whether there are alternative means of exercising the right in question that remain open to prison inmates; (iii) whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards and other inmates, and upon the allocation of prison resources generally; and (iv) whether there are reasonable alternatives available to the prison authorities.

*Covino*, 967 F.2d at 78-79 (citing *Turner*, 482 U.S. at 89-90).  Courts must afford prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to

preserve internal order and discipline and to maintain institutional security."
*Bell* v. *Wolfish*, 441 U.S. 520, 547 (1979); *see also Florence* v. *Bd. of Chosen Freeholders*, 566 U.S. 318, 328 (2012).  Thus, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."  *Bell*, 441 U.S. at 548 (quoting *Pell* v. *Procunier*, 417 U.S. 817, 827 (1974)).  "The burden is upon the prisoner to show that a challenged prison regulation is unreasonable."  *Covino*, 967 F.2d at 79.

Alternatively, where an inmate "challenges an isolated search," courts apply the standard set forth in *Bell*.  *See Harris*, 818 F.3d at 58.  In an effort to balance "the need for the particular search against the invasion of personal rights that the search entails[,]" this test requires courts to "consider [i] the scope of the particular intrusion, [ii] the manner in which it is conducted, [iii] the justification for initiating it, and [iv] the place in which it is conducted."  *Id.* (quoting *Bell*, 441 U.S. at 559).

###　　　b.　Discussion

The alleged surveillance of the shower areas effectively amounts to a "strip search" of inmates, *i.e.*, "an inspection of a naked individual, without any scrutiny of the subject's body cavities."  *Harris*, 818 F.3d at 58 (quoting *Cookish* v. *Powell*, 945 F.2d 441, 444 n.5 (1st Cir. 1991)).  "Regardless of who performs the search ... '[a] strip search that involves a stranger peering without consent at a naked individual ... is a serious invasion of privacy.'"  *Id.* (quoting *Florence*, 566 U.S. at 344-45 (Breyer, J., dissenting)); *accord Keaton* v. *Ponte*,

No. 16 Civ. 3063 (KPF), 2017 WL 3382314, at *12 (S.D.N.Y. Aug. 4, 2017).
Nevertheless, the Second Circuit has said that inmates generally have "no
expectation of privacy in the use of prison showers[,]" in light of prison officials'
"security justification for visually monitoring prison showers." *Telesford*, 693
F. App'x at 3; *see also Roundtree* v. *City of New York*, No. 15 Civ. 8198 (WHP),
2018 WL 1586473, at *12 (S.D.N.Y. Mar. 28, 2018) ("Aside from generally
alleging that he had some privacy interest, Roundtree fails to counter the
simple reality of prison life — that there is no expectation of privacy in showers,
clinics, or other areas in which prison officials routinely monitor and search
prisoners."); *accord Garrett* v. *Thaler*, 560 F. App'x 375, 380-81 (5th Cir. 2014)
(per curiam) (finding no constitutional issue with placement of surveillance
cameras in prison restroom and shower areas because "comprehensive
surveillance by all guards increases the overall security of the prison,
minimizing inmate-on-inmate violence and sexual assaults"); *Timm* v. *Gunter*,
917 F.2d 1093, 1101-02 (8th Cir. 1990) ("Whatever minimal intrusions on an
inmate's privacy may result from such surveillance, whether the inmate is
using the bathroom, showering, or sleeping in the nude, are outweighed by
institutional concerns for safety and equal employment opportunities.").

Thus, to make out a claim that the alleged surveillance of the MDC
shower areas violated Plaintiff's Fourth Amendment rights, Plaintiff must allege
facts that indicate that the surveillance was not justified by legitimate security
concerns and instead "was meant to intentionally humiliate, harass, or abuse
him." *Keaton*, 2017 WL 3382314, at *12 (citing *Perkins* v. *City of New York*,

No. 14 Civ. 3779 (WHP), 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017) ("[W]hile humiliation caused by strip searches may be sufficient to make a claim, the search must be conducted intentionally to harass or embarrass the plaintiff." (internal quotation marks omitted))).  Plaintiff provides no such facts in support of his claim, nor does he identify any individual defendant who was involved in the surveillance.  His allegations therefore are not "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555. Because Plaintiff has not carried his burden to show that the MDC's surveillance practices are unreasonable, *see Covino*, 967 F.2d at 79, his Fourth Amendment claim is not viable and must be dismissed.  *Accord Roundtree*, 2018 WL 1586473, at *12 ("Roundtree has done nothing to overcome the presumption that 'overall considerations of institutional security outweigh a prisoner's claim to privacy in particular cases.'" (quoting *United States* v. *Cohen*, 796 F.2d 20, 22-23 (2d Cir. 1986))).

### 2. Plaintiff's Claim Premised on a Violation of His Eighth Amendment Rights

Plaintiff's Complaint does not specify the constitutional provisions he deems the MDC's surveillance to violate, and the City focuses in its motion papers on Plaintiff's Fourth Amendment rights.  Nonetheless, in the interest of completeness, the Court considers as well whether Plaintiff has plausibly alleged an Eighth Amendment claim.  For the reasons set forth below, the Court determines that he has not.

### a.    Applicable Law

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling* v. *McKinney*, 509 U.S. 25, 31 (1993).  The Supreme Court has "held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,'" *Estelle* v. *Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop* v. *Dulles*, 356 U.S. 86, 101 (1958)), "or which 'involve the unnecessary and wanton infliction of pain,'" *id.* (quoting *Gregg* v. *Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)); *see also*, *e.g.*, *Hope* v. *Pelzer*, 536 U.S. 730, 737-38 (2002).  "What is necessary to establish an 'unnecessary and wanton infliction of pain,' ... varies according to the nature of the alleged constitutional violation."  *Hudson* v. *McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley* v. *Albers*, 475 U.S. 312, 320 (1986)).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components — one subjective, focusing on [a] defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  *Wright* v. *Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson*, 503 U.S. at 7-8); *accord Harris*, 818 F.3d at 63; *Darnell* v. *Pineiro*, 849 F.3d 17, 29-33 (2d Cir. 2017).  To plead properly the subjective component, a "prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind."  *Harris*, 818 F.3d at 63 (internal quotation marks omitted) (quoting *Crawford* v. *Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)).  This "requires

a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct."  *Id.* (internal quotation marks omitted) (quoting *Wright*, 554 F.3d at 268).

To plead the objective component of this claim, a prisoner must "allege that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions."  *Harris*, 818 F.3d at 64 (internal quotation marks omitted) (quoting *Crawford*, 796 F.3d at 256).  This component "is also context specific, turning upon contemporary standards of decency."  *Id.* (internal quotation marks omitted) (quoting *Blyden* v. *Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)).  As relevant here, the Eighth Amendment protects prisoners from "calculated harassment unrelated to prison needs."  *Hudson*, 468 U.S. at 530.

### b.    Discussion

Plaintiff alleges that his housing unit "has a camera that points directly towards and into the shower and all staff can watch these cameras and all staff can [fulfill] any fetishes and sexual fantasies without [his] consent and can watch them as many times as they want."  (Compl. ¶ V).  As the Court held in *Keaton* when faced with similar but even more egregious allegations, "[t]o the extent this conduct is cognizable as sexual abuse, it does not violate Plaintiff's Eighth Amendment rights."  2017 WL 3382314, at *10.  This is because "sexual abuse by a corrections officer may constitute cruel and unusual punishment" only if it is "'severe or repetitive.'"  *Crawford*, 796 F.3d at 257 (quoting *Boddie*

13

v. *Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)).  "Recurrences of abuse, while not a prerequisite for liability, bear on the question of severity: Less severe but repetitive conduct may still be 'cumulatively egregious' enough to violate the Constitution."  *Id.* (quoting *Boddie*, 105 F.3d at 861).

Plaintiff has not alleged illicit physical contact or personal harassment by prison officials, and "the Court does not believe the [conduct] Plaintiff does allege can be characterized as 'severe.'"  *Keaton*, 2017 WL 3382314, at *10. Thus, as in *Keaton*, "Plaintiff has not pleaded that he was subject to sexual abuse that constituted cruel and unusual punishment under the Eighth Amendment."  *Id.*  Consequently, to the extent that his Section 1983 claim may be predicated upon a violation of his Eighth Amendment rights, it must be dismissed.

### 3.    Plaintiff's Claim for Municipal Liability Against the City of New York

Municipal entities may be sued directly for constitutional violations pursuant to Section 1983, *see Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), but cannot be held liable for the acts of their employees under the doctrine of *respondeat superior*, *see Pembaur* v. *City of Cincinnati*, 475 U.S. 469, 478 (1986).  In other words, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent

constitutional violation." *Segal* v. *City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694).

As discussed above, Plaintiff has not pleaded a viable claim for a violation of his constitutional rights under either the Fourth or Eighth Amendment.  Because "[a]n underlying constitutional violation is a required predicate for municipal liability," *Nardoni* v. *City of New York*, 331 F. Supp. 3d 116, 125 (S.D.N.Y. 2018) (citing *City of Los Angeles* v. *Heller*, 475 U.S. 796, 799 (1986)), to the extent Plaintiff intended to state a claim for municipal liability under Section 1983, such claim must be rejected.

### 4.  Plaintiff's Intentional Infliction of Emotional Distress Claim

A plaintiff asserting intentional infliction of emotional distress under New York law must allege conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Naughright* v. *Weiss*, 826 F. Supp. 2d 676, 697 (S.D.N.Y. 2011) (quoting *Sheila C.* v. *Povich*, 781 N.Y.S.2d 342, 351 (1st Dep't 2004)).  Under New York law, the claim consists of the following four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard for a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the harm to plaintiff; and (iv) severe emotional distress." *Howell* v. *N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993).

Even if this claim were properly pleaded, the Court would decline to exercise supplemental jurisdiction over it in light of the dismissal of Plaintiff's

federal claims.  *See E & L Consulting, Ltd.* v. *Doman Indus. Ltd.*, 472 F.3d 23, 33 (2d Cir. 2006) (affirming propriety of dismissal of state-law claim because all federal claims had been dismissed); *Giordano* v. *City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) ("[I]n the absence of any remaining federal claims, the [state-law question] ... is a question best left to the courts of the State of New York."); *cf. Valencia ex rel. Franco* v. *Lee*, 316 F.3d 299, 306 (2d Cir. 2003) ("[W]here the federal claims had been dismissed at a relatively early stage and the remaining claims involved issues of state law that were unsettled, we have concluded that the exercise of supplemental or pendent jurisdiction was an abuse of discretion.").  Accordingly, the Court dismisses Plaintiff's state-law claim without prejudice.

**C.    The Court Will Permit Plaintiff to Replead**

Federal Rule of Civil Procedure 15 mandates that courts "should freely give leave" to amend in the early stages of litigation "when justice so requires." Fed. R. Civ. P. 15(a)(2).  This permissive standard is consistent with the Second Circuit's "strong preference for resolving disputes on the merits."  *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Williams* v. *Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam)) (citing *Foman* v. *Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.")).

16

Although Plaintiff declined to oppose Defendant's motion for judgment on the pleadings, the Court nevertheless believes that Plaintiff, given his *pro se* status, should be afforded "the opportunity to demonstrate that [his] claims deserve to be decided on the merits." *Loreley*, 797 F.3d at 191. It is the Court's hope that "[with] the benefit of a ruling, ... [P]laintiff will ... see the necessity of amendment [and] be in a position to weigh the practicality and possible means of curing specific deficiencies." *Id.* at 190. Plaintiff may, but is not required to, replead each of his claims, on or before **July 19, 2021**. He should consider this Opinion carefully in making his decision. If Plaintiff does not replead his claims on or before the July 19 date, the Court will dismiss his federal claims with prejudice.

## CONCLUSION

For the reasons set forth in this Opinion, the City's motion for judgment on the pleadings is granted. The Clerk of Court is directed to terminate the motions at docket entries 43 and 49. The Clerk of Court is further directed to transmit a copy of this Opinion to Plaintiff at his address of record.

SO ORDERED.

Dated: June 17, 2021
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

17